**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAEMON ADDAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 17-cv-151-JPG-CJP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Daemon Addams seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in February 2013, alleging disability beginning on December 12, 2011.[1] After holding an evidentiary hearing, ALJ Stephen M. Hanekamp denied the application in a written decision dated July 21, 2015. (Tr. 12-24.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and plaintiff filed a timely complaint in this Court.

## Issue Raised by Plaintiff

Plaintiff argues that the ALJ erred in failing to resolve conflicts between the testimony of the vocational expert and information contained in the *Dictionary of Occupational Titles.*

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable

---

[1] At the time he filed his application, plaintiff's name was William Allen Pruitt. He changed his name to Daemon Nox Addams in April 2014. (Tr. 106.)

statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

In order to receive DIB, plaintiff must establish that he was disabled as of his date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently

unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) ([u]nder the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. [i]f a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that the Commissioner made no mistakes of law. This scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but only whether the ALJ's findings were supported by substantial evidence and whether the ALJ made any errors of law. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial

evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). While judicial review is deferential, however, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Hanekamp followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2016. The ALJ found that plaintiff had severe impairments of complex regional pain syndrome of the left arm, mild left carpal tunnel syndrome, morbid obesity, depression, and anxiety/post-traumatic stress disorder. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with a number of physical and mental limitations. As is relevant here, he was limited to only occasional reaching, handling, fingering, and pushing/pulling with his left (non-dominant) upper extremity. He was not limited in using his right hand and arm.

Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was not able to do his past relevant work, but that he was able to do other jobs that exist in significant numbers in the economy.

4

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period. In view of plaintiff's arguments, the Court will omit a discussion of the medical evidence.

**1.    Evidentiary Hearing**

Mr. Addams was represented by an attorney at the evidentiary hearing in April 2014. (Tr. 31.) Plaintiff had worked in the past cleaning airplanes for about six months, and had worked as a CNA for a number of years after that. (Tr. 33.) The VE testified that both of plaintiff's past jobs were classified as medium exertion, although he had performed the airplane cleaner job at the light level. The ALJ asked the VE a hypothetical question that corresponded to the RFC assessment, including the limitation of only frequent use of the left upper extremity to reach, handle, finger, and push/pull. The VE testified that this person could not do plaintiff's past work. He identified two other jobs that could be done by a person with plaintiff's RFC: circuit board screener (DOT 726.684-110) and semiconductor bonder (DOT 726.685-669). (Tr. 45-48.)

The ALJ then asked about conflicts with the DOT:

Q.    All right. So – pardon me – are there any conflicts between the information in the DOT and the selected characteristics of occupations compared to your testimony today?

A.    There's no conflicts, Your Honor, even though some of the information is not included, such as off-task, absenteeism, contact with others, I think and I hope that's all.

Q.    All right. And your opinion about those matters is based on what?

A.    25 years experience doing job placement activity and talking to employers and doing job analysis where I find out the essential functions of the job.

(Tr. 49.)

5

Plaintiff's counsel asked no questions of the VE.

## Analysis

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform his past work, the Commissioner bears the burden of showing that he is capable of performing other work that exists in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy. An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between his testimony and the information in the DOT:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR-004p, 2000 WL 1898704, at *2.

The Seventh Circuit agrees that, pursuant to SSR-004p, an ALJ has an affirmative duty to ask the VE whether her testimony conflicts with information contained in the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

6

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT specifies whether reaching, handling, and fingering are required, and if so, whether they are required occasionally, frequently, or constantly. Occasionally means up to one-third of the time, and frequently means from one-third to two-thirds of the time. The DOT does not, however, say whether *bilateral* reaching, handling or fingering are required, meaning it does not specify whether the job can be done by a person like plaintiff who is limited in his ability to use one arm and hand.

The VE testified that, with the RFC assessed by the ALJ, plaintiff could do the jobs of circuit board screener and semiconductor bonder. The job of circuit board screener requires frequent reaching, handling, and fingering. DOT 726.684-110, Circuit Board Screener, 1991 WL 679616. The job of semiconductor bonder requires occasional reaching, frequent handling, and frequent fingering. DOT 726.685-066, Semiconductor Bonder, 1991 WL 679631.

Plaintiff argues that there is a conflict between the VE's testimony and information contained in the DOT where, as here, the VE testified about a subject not covered by the DOT: whether a job requires the use of both arms and hands at the frequency specified by the DOT.

At the hearing, plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT. Counsel asked no questions at all of the VE. Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)) (emphasis in original).

Relying on *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008), defendant argues that

7

there is no conflict where the VE testifies about information that is not contained in the DOT.

In *Zblewski*, the ALJ asked the VE a hypothetical question that included a limitation to a sit/stand option. The ALJ there did not ask the VE whether his testimony conflicted with the DOT. Plaintiff argued that the ALJ erred because he failed to resolve the inconsistency between the VE's testimony and the DOT, based on the absence of a definition in the DOT of a sit/stand option. Noting that the ALJ has a duty to enquire into and resolve *apparent* conflicts, the Seventh Circuit disagreed, holding that "[b]ecause the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT." *Zblewski,* 302 F. App'x at 494.

Defendant reads *Zblewski* to mean that there is no conflict between the VE's testimony and "the occupational information supplied by the DOT" if the DOT does not supply such information. (Doc. 21, p. 4.) In the Court's view, this is too broad a reading. First, *Zblewski* is an unpublished opinion. More importantly, because the conflict had not been identified at the hearing in *Zblewski*, the issue before the Court was whether the conflict was apparent such that, under *Overman, supra*, the ALJ had a duty to enquire into the conflict. In that context, the Seventh Circuit's holding, quoted above, is more properly read as meaning that the conflict was not apparent, and not, as defendant would read it, that there was no conflict.

Moreover, this Court's reading of *Zblewski* is in line with SSR 00-4p. In the section of the SSR entitled "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information," the agency gives two examples of "reasonable explanations for such conflicts." The first example involves evidence from a VE which includes "information not listed in the DOT." The second example is "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific

8

settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR-004p, 2000 WL 1898704, at *2-3. Thus, it would appear that the agency's own interpretation is that there is a conflict between the VE's testimony and the DOT where the VE testifies about information that is not contained in the DOT.

Plaintiff's position is also supported by *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). There, the ALJ failed to ask whether the VE's testimony conflicted with the DOT. One of the limitations in issue was a reaching limitation. The Seventh Circuit held that the ALJ has an affirmative duty to enquire about conflicts with the DOT. The Court noted, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Prochaska*, 454 F.3d at 736. This language suggests that the VE's testimony here conflicted with the DOT.

Defendant also cites a number of unpublished district court cases and a Fifth Circuit opinion in support of her assertion that "courts have consistently held that no conflict exists between the DOT and VE testimony that a claimant with limited use of his non-dominant arm could perform jobs requiring frequent reaching, fingering, or handling." (Doc. 21, p. 5.) She fails to cite two opinions that hold the opposite and support plaintiff's argument: *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015), and *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014).

This Court finds that the VE's testimony conflicted with the DOT with regard to the reaching, handling, and fingering requirements of the two jobs he identified. Of course, plaintiff's counsel did not raise the conflict at the hearing, and plaintiff therefore cannot raise it here unless the conflict was obvious enough that the ALJ should have recognized it without any prompting from plaintiff. *Overman,* 546 F.3d at 463. An ALJ who routinely handles social

security disability hearings presumably has a working knowledge of DOT job descriptions; he should know that those descriptions specify the frequency of reaching, handling and fingering, but not whether bilateral reaching, handling and fingering is required. Accordingly, when a VE testifies that a particular job can be performed by a person who is limited to reaching, handling and fingering at a frequency less that what is required by the DOT, it should be obvious to the ALJ that the VE's testimony conflicts with the DOT.[2]

There is an additional factor here: the VE (most likely unintentionally) misled the ALJ. He said that he had testified about subjects not included in the DOT "such as off-task, absenteeism, contact with others, I think and I hope that's all." That testimony was incorrect; the subject of whether the jobs require bilateral reaching, handling, and fingering at the specified frequency is not included in the DOT.

It is not a meaningless formality to require the ALJ to ask the VE about conflicts with the DOT. If the testimony conflicts with the DOT or is about a subject not included in the DOT, the basis of the VE's testimony obviously cannot be the DOT. The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Again, the Commissioner bears the burden of proof at step five. Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions. "If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Federal Rule of Evidence 702) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). There is no way to assess the reliability

---

[2] Of course, the conflict with the DOT should also be apparent to an attorney experienced in social security disability law. Raising the issue at the hearing is obviously the better practice.

of the VE's testimony where he testifies about a subject not included in the DOT and gives no other basis for his testimony.[3]

Because the ALJ's decision was not supported by substantial evidence, this case must be remanded. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant time or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

**Conclusion**

The Commissioner's final decision denying Daemon Addams' application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:   October 10, 2017**

                                          *s/ J. Phil Gilbert*
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**

---

[3] Note that an ALJ's explanation that he relied on his unspecified past experience, knowledge of the labor market, and labor studies is an insufficient basis on which to judge the reliability of his testtimony. *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014).